## CITY OF VERNON v. LOW.
### No. 5387.

Court of Civil Appeals of Texas. Amarillo.
Feb. 2, 1942.

Jesse Owens and J. Shirley Cook, both of Vernon, for appellant.

Ben W. Tipton, of Electra, for appellee.

FOLLEY, Justice.

This suit was filed March 11, 1941, by the appellee, I. J. Low, against the appellant, City of Vernon, to recover damages alleged to have been sustained by the appellant's wrongful disinterment and reburial of the remains of Lena Low, first wife of appellee, without the latter's knowledge or consent. Mrs. Low died in Wilbarger County October 14, 1919, and was buried the next day in the S. W. 1/4 of Lot 74, Block 6, of the East View Cemetery of Vernon, Texas. The deed from the appellant to appellee for the burial ground for such purpose called for the N. E. 1/4 of Lot 74 of the same block. These cemetery lots contained room for twelve graves and each quarter thereof room for three graves. The testimony showed that the appellant had nothing to do with locating the graves, but merely sold the ground therefor. It appears that within a few months after his first wife's death the appellee moved away from Wilbarger County, not knowing that by mistake his wife had been buried in the wrong quarter of Lot 74. Thereafter, on October 20, 1937, upon the insistence of the real owner of the lot upon which Mrs. Low had been buried, the City of Vernon had the sexton of the cemetery disinter and rebury the remains of appellee's wife in the N. E. 1/4 of Lot 74. For this purpose the city purchased and used a new cypress box for the reinterment of appellee's wife. This disinterment and reburial was admittedly done without the knowledge or consent of appellee. The city secretary of the appellant city testified that he had attempted to locate the appellee for several months prior to the reburial, but to no avail.

The trial resulted in a judgment for $350 in favor of the appellee based upon a jury's verdict. The appellant filed motions for a peremptory instruction and for judgment non obstante veredicto, which were overruled, to which action of the court the appellant duly excepted and properly preserved the same for our consideration. The appellant also presents as error the court's action in overruling two special exceptions, one of limitations and one directed at appellee's alleged failure to comply with a notice of injury provision of the appellant's charter, as will hereinafter appear.

Although the jury found the city was negligent in removing the body without appellee's consent and in failing to use ordinary diligence in ascertaining appellee's whereabouts prior to the disinterment, in response to the issue of proximate cause in connection with such negligent acts, the jury responded, "No Injury". In response to other issues, the jury found the city was not negligent in the way and manner in which the body was removed, and yet, in another issue relative to damages, found that $350 would compensate the appellee for damages sustained by the "actions" of the appellant in removing the body. In answer to still other issues, the jury further found that the city did not act willfully and with reckless and gross indifference in moving the body, and that the appellee was due no money as exemplary damages on account of the disinterment. This verdict, in our opinion, in the absence of the establishment of causal connection upon the issues submitted, was insufficient as a basis for the judgment rendered for the appellee and presents fundamental error in the face of the record requiring a reversal of the judgment. However, due to other assignments which we think require that a judgment be rendered for the appellant, we direct our further attention to those matters which, in our judgment, will finally dispose of the case in this court.

As we view the appeal, the controlling questions presented are whether or not the appellee's cause of action is barred by the two year statute of limitations, and whether or not a special provision of the charter of the appellant city precludes a recovery under the pleadings and facts of this case. The charter provision in question is as follows: "Exemption From Liability for Damages. Before the City of Vernon shall be liable for damages of any kind, the person injured or someone in his behalf, shall give the Mayor, or City Commissioners notice in writing of such injury within thirty days after the same has been received, stating specifically in such notice when, where and how the injury occurred and the extent thereof."

In order to fully understand the significance of the question of limitations and the effect of the above charter provision, we deem it expedient to state the material

portions of the pleadings of the parties. In his original petition, the appellee alleged that his wife died October 14, 1919, and the next day was buried in the East View Cemetery at Vernon; that such cemetery was owned and operated by the City of Vernon; that the appellee at such time purchased from the appellant the N. E. ¼ of Lot 74, Block 6, in such cemetery for the burial of his wife and secured from the appellant a burial permit; that appellee had nothing to do with the location of the grave to be dug, but that such grave was dug by the cemetery sexton who was in the employment of the appellant; that on October 20, 1937, the appellant, without appellee's knowledge or consent, disinterred and reburied the remains of appellee's wife; that he had no knowledge that the remains of his wife had been so disinterred and relocated until July 1, 1940, when he received such information from one of his sisters; that by such conduct upon the part of the city the appellee's nervous system was greatly wounded and shocked and he thereby suffered the most excruciating mental pain and anguish; that he immediately came to Vernon, applied for a permit to rebury the remains of his wife, which permit was issued, and that he had such grave reopened and the pine box in which the remains of his wife had been placed, removed; that he thereupon purchased a new casket and reburied his wife's remains therein; that in doing so he necessarily expended $30; that upon coming to Vernon and inquiring of the city secretary and mayor of the city about the disinterment, each of such officials first refused to give him any information, but upon his insistence informed him of the details of the matter; that all of said acts of the city were willfully, maliciously, and wantonly done in gross indifference to appellee's rights and in gross violation of law, especially Art. 928b, Vernon's Ann.Civ.St.; and that as a result of such conduct the appellee has sustained $5,000 actual, and $5,000 exemplary, damages for which he sought judgment.

In addition to a general demurrer and general denial, the appellant interposed as a bar to appellee's recovery two special exceptions, as above indicated, whereby it invoked respectively the two year statute of limitations, Art. 5526, Vernon's Ann.Civ. St., and the above provision from the appellant's charter, alleging noncompliance with such provision.

By supplemental petition the appellee sought to avoid the bar of the two year statute of limitations on the alleged theory that it did not apply to his cause of action because there rested upon appellant a legal obligation to notify the appellee of its intention to disturb the grave, which the appellant failed to do and that he did not learn of the disinterment until July 1, 1940. He further alleged that when he came to Vernon on August 3, 1940, to make inquiry about the matter, the failure of the city secretary and mayor at his first interview with them to disclose the facts concerning the disinterment amounted to a fraudulent concealment of the facts and circumstances concerning the reburial. In reply to the appellant's plea relative to his failure to comply with the above provision of the city charter, he asserted that such provision was not applicable to his cause of action, and that if it was, the city waived compliance therewith because the disinterment was performed without his knowledge or consent and he was thus prevented from complying with the provision.

The court overruled the general demurrer, the two special exceptions mentioned, and another special exception not here material.

 We think it is immaterial whether this cause of action falls under section 1 of article 5526, relative to a trespass, under section 6 thereof, concerning injuries done to the person of another, or partially under both of such sections, or some other section of the article. In any event, since the cause of action is one sounding in tort, we think it is governed by the two year statute of limitations. Blondeau v. Sommer, Tex. Civ.App., 139 S.W.2d 223, writ refused. In this connection, we are not impressed with appellee's theory that such statute does not apply to his cause of action because of the legal duty resting upon the appellant to notify the appellee of its intention to disturb the grave. This theory is ostensibly based upon the provisions of article 928b relative to the removal of dead bodies. There is nothing in that article to indicate that a failure to comply with its provisions would thereafter result in the tolling of the statute of limitations, nor do we think such theory tenable under any statute. We are further of the opinion that the cause of action arose on October 20, 1937, which was shown by the pleadings and the proof to have been the date of the disinterment. The fact that a portion of the damages, that

is, the mental suffering and mental anguish, did not result until the appellee learned of the disinterment more than two years thereafter is not important. A cause of action ordinarily arises, and the statute of limitations commences to run, immediately upon the commission of the wrong about which the complaint is made, and the running of the statute is not postponed until damage results from the wrong. 28 Tex.Jur. 146, par. 62; Houston Water Works Co. v. Kennedy, 70 Tex. 233, 8 S.W. 36, 37. Chief Justice Stayton of the Texas Supreme Court, in analyzing such rule in the Kennedy case, said: "If, however, the act of which the injury was the natural sequence was a legal injury,—by which is meant an injury giving cause of action by reason of its being an invasion of a plaintiff's right, —then, be the damage however slight, limitation will run from the time the wrongful act was committed, and will bar an action for any damages resulting from the act, although these may not have been fully developed until within a period less than necessary to complete the bar."

A similar rule is stated in 17 R.C.L. 763, par. 129, to the effect that " * * * where an injury, though slight, is sustained. in consequence of the wrongful or negligent act of another and the law affords a remedy therefor the statute of limitations attaches at once. It is not material that all the damages resulting from the act should have been sustained at that time and the running of the statute is not postponed by the fact that the actual or substantial damages do not occur until a later date. The act itself is regarded as the ground of the action and is not legally severable from its consequences. The statute then begins to run, and not from the time of the damage or discovery of the injury."

Again, in 28 Tex.Jur. 182, par. 90, we find this language: "As a general rule, the statute of limitations commences to run upon a cause of action for tort from the time that the duty owing to the plaintiff was breached by the wrongful or negligent act of the defendant, even though, in some cases, the plaintiff is ignorant of the existence of his cause of action, or although damage was not sustained until after the commission of the tort."

It is also the rule in an action for damages for fraud that limitations begin to run when the fraud is perpetrated, or, if the fraud is concealed, from the time it is discovered or could have been discovered by the exercise of reasonable diligence. 28 Tex.Jur. 124, 125, 153; American Indemnity Co. v. Ernst & Ernst, Tex.Civ.App., 106 S.W.2d 763, 765, writ refused; Blondeau v. Sommer, Tex.Civ.App., 139 S.W. 2d 223, writ refused.

On the question of concealment, in Owen v. King, 130 Tex. 614, 111 S.W.2d 695, 697, 114 A.L.R. 859, the following rule is announced: "The fraudulent concealment of a cause of action by the defendant, even though that cause of action may not have arisen in fraud, will avoid the bar of the statute of limitation, where the plaintiff, after exercising ordinary diligence, fails to discover the existence of a cause of action. But the concealment must be fraudulent. Mere failure to disclose a cause of action or mere concealment of a cause of action, when the defendant owes no duty to disclose, is not fraudulent concealment."

In the recent case of Carrell et al. v. Denton, Tex.Com.App., 157 S.W.2d 878, 879, not yet reported in State Reports, the Commission of Appeals of Texas said that among other essential ingredients, "a fraudulent concealment in cases of this sort includes, first, actual knowledge of the fact that a wrong has occurred, and, second a fixed purpose to conceal the wrong * * *."

Measured by these rules, we think the appellee's cause of action is barred by the two year statute of limitations. The suit was not filed until three years, four months and eleven days after the disinterment, which, we have concluded, was the genesis of the cause of action. The appellee sought to escape the bar of the statute by attempting to allege a fraudulent concealment of his cause of action by the city. Both the pleading and the proof fall far short of this requirement. The defense is based solely upon the allegation that in August, 1940, when the appellee interviewed Mr. S. H. Hall, the city secretary of Vernon, and Mr. J. V. Owen, the mayor, such officials first refused to inform him of the disinterment. This conduct, as alleged, was two years, nine months and thirteen days after the disinterment. There was no allegation of any fraudulent concealment within the limitation period, that is, within two years from the disinterment. Moreover, the proof does not support the allegation made. The appellee, himself, testified, as did Mr. Hall, that the latter told him of the disinterment by the city at the first

interview between them and directed the appellee to go see the mayor about the matter. He further testified that he then went to see the mayor and the latter told him he knew nothing of the incident and sent him back to the city secretary for further details. It appears that Mr. Owen was not mayor in 1937 at the time of the disinterment. This conduct of the mayor, even if it had occurred during the limitation period, was insufficient, we think, to toll the running of the statute. It did not show "a fixed purpose to conceal the wrong" then or that such a fixed purpose had theretofore existed. Furthermore, there was nothing to conceal from appellee. He had theretofore learned of the disinterment and reburial from the city secretary. We therefore conclude, in the face of appellant's plea of limitations, that the appellee neither alleged nor proved a cause of action.

Although no proof was offered as to the above charter provision, the appellant is a home-ruled city and we must take judicial notice of the provisions of its charter. Art. 1174, Vernon's Ann.Civ.St. We have recently held that a charter provision of another city in the exact language of the one involved herein was a valid provision and that a compliance therewith was a condition precedent to the accrual of liability. Hallman v. City of Pampa, Tex.Civ.App., 147 S.W.2d 543, writ refused. It is therefore our further opinion that the appellee is not entitled to recover because he failed to allege or prove a compliance with this charter provision, nor did he allege or prove any sufficient reason for his noncompliance therewith. The proof shows that no notice in writing with reference to appellee's injuries was given to the mayor or commissioners before January 15, 1941, which was more than three years after the disinterment, and more than six months after appellee learned of it. If it might be said that the appellee was excused from complying with the charter provision before learning of the disinterment, which question we are not required to pass upon, his noncompliance during the six-month period after being fully apprized of the facts is excused neither by pleading nor by proof, which we think is fatal to his cause of action. Hallman v. City of Pampa, supra, and authorities therein cited.

From what we have said it follows that we conclude the court erred in failing to sustain the two special exceptions, in refusing to direct a verdict for the appellant, and in overruling appellant's motion for judgment non obstante veredicto.

The judgment of the trial court is reversed and judgment here rendered for the appellant.